IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

WILLIAM D.

         **Plaintiff,**

  v.                                     Civil Action 1:25–cv–00029
                                         Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

         **Defendant.**

## OPINION AND ORDER

Plaintiff, William D. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 12) and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff applied for DIB on August 15, 2023, alleging disability beginning July 30, 2021, due to "right shoulder impingement syndrome, left thumb laceration and 72 degree of movement, chronic left ankle sprain, neurocognitive disorder with behavioral disturbance, PTSD [Post–Traumatic Stress Disorder], panic attacks, and major depressive disorder." (R. at 212–13, 241). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held an online video hearing on May 29, 2024. (R. at 33–67). The ALJ then issued a decision denying her benefits on August 9, 2024. (R. at 14–32). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision (Doc. 1), and the Commissioner filed the administrative record. (Doc. 11). The matter is ripe for review. (Docs. 12, 14).

A. **The Administrative Record**

In his opinion, the ALJ summarized Plaintiff's statements to the agency, hearing testimony, and Plaintiff's medical records and symptoms. (R. at 21–23). The ALJ also summarized and evaluated the medical source opinions and prior administrative medical finding. (R. at 20, 24–26). Rather than repeat these summaries, the Court will focus the evidence pertinent to Plaintiff's assigned error below.

B. **The ALJ's Decision**

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2026, and has not engaged in substantial gainful activity since July 30, 2021, his alleged onset date of disability. (R. at 19). The ALJ determined that Plaintiff suffered from the severe impairments of Mood disorder; post–traumatic stress disorder (PTSD); and substance abuse in remission. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (R. at 21).

As for Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He could comprehend, remember, and carry out simple (1–2 step) and occasional complex (3–4 step) instructions. He would need a setting that does not have fast–paced demand. He could adapt and change themselves in a structured and predictable work setting, where changes can be explained.

(R. at 23).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely

consistent with the medical evidence and other evidence in the record." (R. at 23–24).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff is unable to perform his past relevant work as a national disaster preparedness specialist, maintenance supervisor, or mechanic. (R. at 26). Considering his age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as a maintenance worker, patient transporter, receiving checker, merchandise marker, front–desk clerk or cleaner. (R. at 26–27). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since July 30, 2021. (R. at 27).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence,

it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff claims the ALJ's opinion contained three errors that require remand. (Doc. 12). He asserts that neither the ultimate RFC nor the ALJ's findings about his physical impairments are supported by substantial evidence. (*Id.* at 5–11). Plaintiff further argues that the ALJ failed to give proper weight to a Veterans Administration ("VA") determination that found him 100% disabled. (*Id.* at 11–13). The Commissioner responds that the ALJ's opinion is proper in all respects. (Doc. 14).

### A. RFC determination

Plaintiff begins by arguing that in crafting the RFC, the ALJ failed to consider fully his limitations in concentration, persistence, and pace and adaptation. (Doc. 12 at 5–9). He says that though the state agency psychologists found that he was moderately limited in these abilities, the ALJ omitted several "critical limitations" they identified. (*Id.* at 6–8). Tangentially, Plaintiff asserts that because the RFC was not supported by substantial evidence, the vocational expert's testimony about the number of jobs Plaintiff could perform in the national economy could not have been accurate. (*Id.* at 8). The Court does not agree with Plaintiff's read.

A Plaintiff's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). The assessment must be based on all the relevant evidence in his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4)

4

evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a); *see also* 20 C.F.R. § 404.1520c(c)(1)–(5) (listing the factors an ALJ considers in considering medical opinions and prior administrative findings).

In determining the RFC, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). This Court must affirm the ALJ's decision if it is supported by substantial evidence. *See Christine G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1969, 2023 WL 5717417, at *6 (S.D. Ohio Sept. 5, 2023) (stating that the court must affirm if substantial evidence supports the ALJ's decision, even if the court would have resolved conflicts in the record differently).

State agency psychologists Audry Todd, PhD, and Courtney Zeune, PsyD, considered Plaintiff's records related to his mental impairments. (R. at 75, 85). They noted Plaintiff has sustained concentration and persistence and adaptation limitations. (R. at 74, 84). Specifically, they said Plaintiff is moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be

---

[1] The regulations define prior administrative findings: "A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (*see* § 416.1400) in your current claim based on their review of the evidence in your case record . . . ." § 404.1513(a)(2), (5).

5

punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal work day or week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. (R. at 75, 85). Based on these limitations, the psychologists opined in the narrative discussion that Plaintiff "is able to comprehend, remember, and carry out simple (1–2 step) and occasional complex (3–4 step) instructions." (*Id.*). They further opined he "would need a setting that does not have fast-paced demand." (*Id.*). And Plaintiff can "adapt and manage [himself] in a structured and predictable work setting, where changes can be explained." (*Id.*).

The ALJ found these opinions persuasive (R. at 25), and substantially adopted the opined limitations. (R. at 23 ("He could comprehend, remember, and carry out simple (1-2 step) and occasional complex (3-4 step) instructions. He would need a setting that does not have fast-paced demand. He could adapt and change themselves[2] in a structured and predictable work setting, where changes can be explained."). (*See also* R. at 62 (reciting the opined limitations almost word for word in a hypothetical to the vocational expert)). Still, Plaintiff is not satisfied. Because the ALJ did not create RFC restrictions specific to each of areas the psychologists noted a moderate limitation, Plaintiff asserts the RFC is not supported by substantial evidence. (Doc. 12 at 6). Plaintiff fundamentally misunderstands the form the psychologists used.

---

[2] To the extent Plaintiff takes issue with the "internal inconsisten[cy]" of the phrase "change themselves" (Doc. 12 at 8), this appears to be a scrivener's error. (*Compare* R. at 75 *with* R. at 23). And at any rate, Plaintiff's single sentence calling attention to this phrasing does not truly raise a separate error with the requisite specificity. *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

The state agency psychologists recorded their opinions in the "Mental Residual Functional Capacity" section of the prior administrative medical finding form. (R. at 74, 84). Directly above the section where the psychologists rated Plaintiff's abilities, the form states "the questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion, which describes how the evidence supports each conclusion. This discussion is documented the explanatory text boxes following each category of limitation." (*Id.* (citation modified)). These instructions make clear that though the psychologists may have rated Plaintiff as being moderately limited in certain areas, those ratings "help determine" Plaintiff's ability to perform sustained work activities. (*Id.*). The "actual" assessment is recorded in the narrative discussion section below the ratings. (*Id.*).

Here, the state agency psychologists concluded that when considering Plaintiff's moderate limitations in certain areas, he retained the capacity to comprehend, remember, and carry out simple and occasionally complex instructions; work in a setting that does not have fast-paced demands; and adapt and mange in a structured and predictable work setting where changes can be explained. (R. at 75–85). The ALJ considered the opinions, posed the opined restrictions to the vocational expert in a hypothetical, found the opinions persuasive, then incorporated the opinions in RFC. This is exactly the process the regulations imagine. *See also McKee v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-12211, 2022 WL 684563, at *6 (E.D. Mich. Feb. 1, 2022) ("[A] doctor's finding, on an RFC assessment form, that a claimant is 'moderately limited' in a particular area, does not amount to a specific limitation which should be included in the RFC."), *report and recommendation adopted*, No. 2:20-CV-12211, 2022 WL 678650 (E.D. Mich. Mar. 7, 2022).

Plaintiff points to other evidence in the record that he says supports a more restrictive RFC. (Doc. 12 at 6–7 (citing *e.g.*, R. at 323 (noting Plaintiff's anxiety about work and interactions with others), 345 (noting Plaintiff's reports of anger and aggression), 418 (questionnaire on which Plaintiff endorsed struggling with anger and irritability, difficulty concentrating, difficulty sleeping, and disturbing dreams), 441 (consultative examiner Dr. James Rosenthal's opinion that Plaintiff has "adequate cognitive skills to understand and complete a one step work assignment")); *but see* R. at 25 (finding Dr. Rosenthal's opinion only somewhat persuasive)). And fundamentally, Plaintiff may wish "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

At base, the ALJ properly accounted for the state agency psychologists' opinions, his reasoning is easily traced, and the ultimate RFC finding was supported by substantial evidence. Accordingly, the Court finds no error.

**B.     Step Two—Physical Impairments**

Plaintiff next asserts the ALJ erred at Step 2 by failing to find that Plaintiff had any severe physical impairments. (Doc. 12 at 9–11).

8

An ALJ must make several determinations at step two. First, an ALJ considers if a claimant's impairment constitutes a "medically determinable" impairment, or an impairment that results from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520; 404.1521. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Additionally, it must meet the durational requirement. 20 C.F.R. § 404.1509. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-5858, 2021 WL 5881784, at *4 (S.D. Ohio Dec. 13, 2021), *report and recommendation adopted*, No. 2:20-CV-5858, 2021 WL 6197808 (S.D. Ohio Dec. 30, 2021) (quoting *Moore v. Comm'r of Soc. Sec.*, No. 2:20-CV-5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021)). "Plaintiff has the burden of proving the existence of a medically determinable impairment." *Id.* (quoting *Moore*, 2021 WL 5149714, at *7).

If an impairment is medically determinable, then an ALJ must determine whether it is severe. *Id.* A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The finding of at least one severe impairment at step two is merely a "threshold inquiry," the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a [plaintiff]'s impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). In such a situation, the ultimate inquiry is whether

9

substantial evidence supports the RFC fashioned by the ALJ. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

Plaintiff contends that the ALJ "simply disregarded" Plaintiff's physical impairments and supporting evidence in classifying them as not severe. (Doc. 12 at 10). He specifically points to "his history of headaches, chronic ankle sprain, osteoarthritis, and tinnitus." (*Id.* at 9). But, contrary to Plaintiff's assertion, the ALJ adequately considered Plaintiff's physical impairments.

At step two, the ALJ began by noting Plaintiff carries diagnoses of hypertension, obesity, and osteoarthritis. (R. at 20). He concluded that the medical records did not show that the impairments "more than minimally" impacted Plaintiff's ability to engage in basic-work related activities or that they were expected to last longer than twelve months. (*Id.*). In coming to this conclusion, the ALJ considered the physical consultative examination performed by Phillip Swedberg, MD. (*Id.* (citing R. at 444–54)). He highlighted that at the examination, Plaintiff complained of right shoulder pain and impingement syndrome, but "acknowledged that his shoulder did not limit his activities." (*Id.* (citing R. at 450)). However, the ALJ found that despite these reports, "Dr. Swedberg's examination did not produce adequate evidence to qualify any of [Plaintiff's] physical impairments as severe." (*Id.* (citing R. at 450)). Specifically, the ALJ noted that during the examination, Plaintiff ambulated with a steady gait and did not use ambulatory aids. (*Id.* (citing R. at 451)). And Plaintiff demonstrated normal manipulative abilities, showed no sign of muscle atrophy, and was noted to have only mild osteoarthritis. (*Id.* (citing R. at 452) (also stating Dr. Swedberg diagnosed Plaintiff with shoulder pain secondary to rotator cuff tendinopathy)). In the end, the ALJ found that Plaintiff's physical impairments are not severe as defined by the regulations. (R. at 20).

Nonetheless, the ALJ found Plaintiff has other severe impairments including mood disorder, PTSD, and substance abuse in remission. (R. at 19). The Sixth Circuit is clear that an ALJ who finds a severe impairment at step two does not reversibly err in declining to find other impairments severe. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."); *Meadows v. Comm'r of Soc. Sec.*, No. 1:07-cv-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008). So, the ALJ's non-severe finding pertaining to Plaintiff's physical impairments by itself does not require reversal.

Still, Plaintiff asserts that the ALJ had a duty to consider the limitations imposed by both severe and non-severe impairments when crafting the RFC. (Doc. 12 at 10). In this respect, Plaintiff is correct. After step two, an ALJ must consider "all of a claimant's impairments in the remaining steps of the disability determination." *Meadows v. Comm'r of Soc. Sec.*, No. 1:07-cv-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe."); *see also* 20 C.F.R. § 416.945(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."); SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). But the ALJ complied with this duty.

Importantly, the ALJ highlighted that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." (R. at 20; *see also* R. at 18–19 (noting the ALJ's duty to consider all of Plaintiff's impairments and citing to SSR 96-8p)). And at step four, he engaged in further analysis of Dr. Swedberg's physical examination record and the prior administrative medical findings. (R. at 25 (observing Dr. Swedberg's opinion did not assess Plaintiff's limitations in a function-by-function manner as required by Social Security policy) (observing the prior administrative medical findings did not classify Plaintiff's migraines nor any other physical impairment as severe but still considering the opined restrictions); *see also* R. at 69–77, 79–87, 444–54). All this shows that the ALJ adequately considered both Plaintiff's severe and non-severe impairments when crafting the RFC. *See, e.g.*, *Rachael G. v. Comm'r of Soc. Sec.*, No. 3:23-CV-115, 2024 WL 2847182, at *7 (S.D. Ohio June 5, 2024) (finding no error where the ALJ appropriately "referred to the same body of evidence" related to functional limitations in considering the plaintiff's non-severe impairments at both steps two and four).

Finally, while Plaintiff contends that limitations related to his physical impairments are "supported by the evidence of the record and clearly affect [his] ability to perform substantial gainful activity on a sustained basis," he failed to identify what those limitations are or point to records opining that he requires them. (*See* Doc. 12 at 9–10). At best, Plaintiff has supplied diagnoses. (*Id.* (citing R. at 320 (diagnosing Plaintiff with foot pain), 323 (listing Plaintiff's physical "active problems" as ankle sprain, joint pain, osteoarthrosis, and fasciitis), 331–32 (same), 338 (same)). However, a "diagnosis, standing alone, is insufficient to establish that the impairment is severe." *Brian M. v. Comm'r of Soc. Sec.*, No. 1:23-CV-130, 2024 WL 514462, at *5 (S.D. Ohio Feb. 9, 2024) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Nor does it "necessarily

result in functional limitations." *Bobb v. Comm'r of Soc. Sec.*, No. 2:19-CV-5612, 2021 WL 716878, at *2 (S.D. Ohio Feb. 24, 2021); *Stevens v. Astrue*, 839 F. Supp. 2d 939, 949 (S.D. Ohio 2012) ("Plaintiff bore the responsibility of not merely producing a diagnosis of an impairment, but of demonstrating correlative functional limitation."). Ultimately, this was Plaintiff's burden. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003) ("[T]he claimant bears the burden of proving the existence and severity of limitations . . . ."); *cf. Laura Q. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-131, 2024 WL 1170037, at *7 (S.D. Ohio Mar. 19, 2024) (finding no error when where the plaintiff did "not identify any functional limitations caused by her knee impairments") (citing SSR 96-8p ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.")).

For all these reasons, Plaintiff's assignment of error is overruled.

C.     **VA Disability Rating**

Finally, Plaintiff argues that when crafting the RFC, the ALJ should have given weight to the VA's 100% disability rating for Plaintiff's "posttraumatic stress disorder with panic attacks, major depressive disorder and unspecified neurocognitive disorder with behavioral disturbance" and 10% disability rating for tinnitus. (Doc. 12 at 11–13; R. at 206–09). In noting the existence of decisions by other governmental agencies in the record, the ALJ wrote:

> Regarding opinions that [Plaintiff] is "disabled" or "unable to work", the [ALJ] did not provide an analysis of medical opinions on issues reserved to the Commissioner of Social Security (20 CFR 404.1520b(c)). Further, though fully considered, the [ALJ] also did not provide articulation about other evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c). Such examples include decisions by other governmental agencies, private insurers, Global Assessment of Functioning ("GAF") scores, and third–party reports (see, e.g., 1D and 5F).

(R. at 26; *see also* R. at 206–09 (the VA decision on disability found at exhibit 1D)).  The ALJ did not need to do more under the current regulations.

As stated above, Plaintiff applied for DIB on August 15, 2023, alleging disability beginning July 30, 2021.  (R. at 17, 212–13).  The regulations provide that for "claims filed on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled[.]"  20 C.F.R. § 404.1504.  The regulations explain that the reason for this is that "[o]ther governmental agencies" like the Department of Verterans Affairs make disability "and other benefits decisions for their own programs using their own rules."  *Id.*  And "[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules."  *Id.*

Importantly, VA disability ratings are diagnosis–driven and not based on an evaluation of remaining functional capacity as is required under the Social Security Regulations.  *Boggs v. Comm'r of Soc. Sec.*, No. 2:20-CV-6135, 2021 WL 4771267, at *6 (S.D. Ohio Oct. 13, 2021).  Thus, they do not contain function–by–function limitations.  *Id.*  And even under the prior regulations, the Sixth Circuit held that a VA disability rating does not bind an ALJ.  *See Turcus v. Soc. Sec. Admin.*, 110 F. App'x, 630, 632 (6th Cir. 2004) ("[A] decision by another government agency as to an individual's disability is not binding upon the Social Security Administration.").

Additionally, the regulations' discussion about the way in which the agency considers evidence also sheds light on the ALJ's analysis in this case.  Specifically, the regulations at 20 C.F.R. § 404.1520b for claims filed on or after March 27, 2017, deem decisions by other governmental agencies, as well as statements on issues reserved to the Commissioner (such as

14

statements that a claimant is or is not disabled), evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled."  20 C.F.R. § 404.1520b(c)(1)–(3) (2017).  The regulations thus make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c) (emphasis added).

Under both 20 C.F.R. § 404.1504 and 20 C.F.R. § 404.1520b, the ALJ did not have to provide any analysis about how he considered Plaintiff's disability rating from the VA.  *See also Christopher L. v. Comm'r, Soc. Sec. Admin.*, No. 3:24-CV-310, 2025 WL 2119471, at *3 (S.D. Ohio July 29, 2025).  That the ALJ noted he "fully considered" the decisions by other governmental agencies, cited to the VA rating record, and explained why he did not provide more analysis about the opinions or articulation about the evidence is enough under the regulations.  (R. at 26).  And while Plaintiff argues that the ALJ did not even discuss the evidence underlying the VA determination, the record shows the ALJ considered the VA providers' notes at several points. (*See, e.g.*, R. at 20 (citing R. at 316, 342, 357, 359, 477–80), 24 (citing R. at 315, 319, 329–30, 343, 350, 384)).

At base, the ALJ followed the regulations, and his decision is supported by substantial evidence.  Accordingly, this error is without merit.

### IV.  CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 12) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Date: November 19, 2025  s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

15